We'll now begin the Brubaker case. Counsel, if you'll please proceed. Good morning, Your Honor. Your Honors, my name is Paola Romero. I represent Tucson Police Officer Sergeant Jack Goldridge and Officer Michael Pelton. I will be referring to them as the Affiance today. I'm a little bit nervous. What are you calling them again? The Affiance. They were the ones who swore on those. The Affiance, okay. And I'd ask that evidence be preserved for my rebuttal. Why don't you just call them officers? Officers, because there's three officers involved and one was not the Affiance. So I wanted to distinguish, and that's why. We understand who's who, so. Excuse me? We understand who's who, so if you call them the defendants, that'll work. Oh. Affiance just seems like such a... I'm sorry, I've told you. Just don't plead them guilty by reason of insanity, and you'll be fine. The officers, the officer defendants in this case, I'm defending them against a Section 1983 claim filed by Mr. Brubaker, claiming they used judicial deception in obtaining the search warrant. My clients, I argue, in a motion for summary judgment, are entitled to qualified immunity. The district court ruled against me, and I think the appeal is based on the numerous errors that the district court made in that finding. First of all, in my motion for summary judgment, I laid out why my officers were entitled to qualified immunity. In response to my motion for summary judgment, the plaintiff had the burden of making a substantial showing that the search warrant contained false statements. Well, it did. Huh? There's no doubt that the affidavit contained a false statement. I disagree, Your Honor. Well, let's read the statement. The statement says, I came in contact with Donald D. He was in the area of a residence that we have received information from concerned citizens that they were selling narcotic drugs. There was no information that narcotic drugs had been sold out of that residence, correct? Out of the residence? Yeah, out of the residence for which the search warrant was issued. Correct. There was no information that narcotic drugs had been sold out of it, correct? Correct, Your Honor. So what you're saying is that... But it says... Let me finish. What you're saying is we should read this statement to mean what the clients thought they meant as opposed to what it means on paper. No, I'm asking the court to read it in the plain meaning of what it says. It does not identify Brubaker's residence. The search warrant, if you read it as a whole, indicated that... What that means, Your Honor, is that there were reports of drug activity in the neighborhood. I know what you think it means, but tell me as a matter of English grammar what you think it modifies. They were selling narcotic drugs. It's a phrase. It's a participial phrase. They does not refer to an individual. It does not refer to a residence. And it exists... What does that refer to? That they were selling narcotic drugs. Because there were drugs being sold in the area. Why should I interpret that as applied... See, you're saying it applies to the area of a residence. And we're saying... It does not apply to a specific residence. It does apply to the residence. The clients were not meaning to tell the judge that they had any information that there were drugs sold out of this residence. Right, and it's... Because if they did tell the judge that, that would be false and a deception, correct? If they said, we have information that Brubaker is selling drugs out of his house and identified Brubaker... No, they don't have to identify Brubaker. Don't change my hypothetical for me. Let's assume that the affidavit said, we have received information that drugs have been sold out of his residence. That would be a false and deceptive affidavit, would it not? I do not agree when you read it in the context of the affidavit. No, no, I'm making up this affidavit. Okay, hypothetically. Hypothetically. Hypothetically. We've received information that drugs have been sold out of this residence. That would be false, would it not? Yes, if this residence was referring to a specific address. They're looking for a search warrant, and they didn't say what the residence is. They're on the telephone with the judge, authorized to issue a warrant to allow them to search a home, and they identify the home, and they say that Mr. Deal, a great name, by the way, for a guy involved in drug trafficking. What the Supreme Court has told us is that when we read the search warrant, one, it doesn't have to be grammatically perfect, and that officers often write search warrants in haste. But what you're leaving out is the context of the whole search warrant, which is the second part where Officer Pelton informed the judge that they did not have an address and that they had to have Mr. Deal pointed out to them three times in order to identify the specific address. So when you read it in the context of this is the information that we have, and we didn't have an address, there's no way that the inference could be that it's Brubaker's residence. Not only that, Your Honors, but he identified, Mr. Deal identified the person selling the drugs to him as Felix, not Mr. Brubaker. This is a matter of technicality, and if you know, or the record tells us, when an officer – this is a telephonic warrant, right? Correct. The officer gets on the phone and calls a duty judge and said, here's my affidavit. It's sworn, right? Yes. They're sworn to tell the truth. Yes. And did they write this out beforehand and read it to the judge? I'm assuming that probably they do have a form. I don't know, Your Honor. Because they talked about – I'm not sure the record says that, but the record at least says they prepared it together, the two defendant officers. So I assume from that that they wrote it out first and then read it to the judge over the phone? That's one part of the judicial discussion. The second part is materiality, and what I want – Okay, so let me ask. That's the question I want to get to, so thank you. Let's assume, as I said, that the affidavit said we had previous complaints that drugs were sold out of this residence. Correct. Not in the area of residence, but Your Honor – Yes, okay, you don't have to keep reminding me. Okay. And you agree that would have been a false statement? If he had identified a specific residence. Well, my question – the letter goes on and says the residence is – we've now confirmed that the residence is 6431 Calamari. So let's assume, again for the purpose of my question, that the officer's affidavit said we had previous information that the drugs were sold out of this specific residence, and that was false. Mm-hmm. Would there – what – could you issue a warrant to absent that information? Yes, you could. Based on what? Actually, Your Honor, I'll delete that statement from the search warrant in question. It is, I came into contact with Donald Deal. Mr. Deal? An informant that they had no previous contact with and no reason to believe was liable, correct? Your Honor, there's no – they – it is undisputed that Officer Peloton believed that Mr. Deal was telling the truth. You don't become a – you don't become a liable informant simply because the police officer believes you. He was not an informant, Your Honor. He was not offered anything in exchange for his information. He volunteered it. The officer came into contact with him in an area that's known for selling drugs and burglary. Let me break in – let me break in for just a second here. Yes. The – in this particular case, Mr. Deal had four previous convictions of lying to the police. There's nothing in the records to substantiate that. I understand that, but that's what turned out – if they had looked further, that's what they would have found. You all rely upon United States v. Miller for the proposition that officers do not have a duty to investigate the records thoroughly to see whether there's such information. But in the Miller case, the police made a diligent search to check someone's background before they got the ruling they did in Miller. In this case, they made no such diligent search. Isn't Miller distinguishable by that fact? No, Your Honor. What's – what the importance of U.S. v. Miller is in terms of a judicial deceptional case is that an – it's clearly established that if the officers were not aware – so we're talking about an officer submitting information to the judge that they know to be false or withholding information. And in the Miller case, what you have is a failure – withholding was a failure to uncover the informant's perjury convictions was, at most, a reckless negligence. But in that case, they did check. They missed some stuff. But in this case, they apparently didn't check. It was right there, right there, that he'd lied four times. Your Honor, there's no – let's go back. Okay. The only evidence – the plaintiff failed to submit any evidence. On the record, an offer of proof of Mr. Deal's criminal record. The district court, therefore, went to the state court suppression ruling for that information. I understand your argument on that point. But there was something else the officers didn't tell the judge, right? The allegation is, is that they – There was something else they did not tell the judge that they were seeking a search warrant at a specific house, right? I don't understand your – Well, they didn't tell the judge that Mr. Deal had lied to them, right? They had no information that Mr. Deal – see, the assumption is – They encounter Mr. Deal, who had been identified under another name by his companion that they first ran into. But when they asked Mr. Deal, do you have any narcotics, he said no. And they asked for a consent search. Guess what they found? Narcotics. So they didn't tell. Why is this so hard for you to agree to? I know you think it's not important or shouldn't justify the issuance of the warrant or a finding that they had misled this judge. But they did not tell the issuing judge that Mr. Deal had lied to them, right? Correct. I thought you were talking about the looking for worse. No, no, no, no. You're referring to the fact that – They omitted to tell the judge that this guy, that they'd never encountered before, they had no history involving him, that he had lied to them when they first encountered him. Correct. And that did not engage the probable cause in this case. It was not material. Because the information that Officer Pelton had was that he did indeed have drugs on him and that it was common in Officer Pelton's experience to encounter individuals who initially lied. If it's so common and so consequential, why not tell the judge? Because, Your Honor, it wouldn't have made any difference. Is there really an issue in front of us? Yes. That's the issue of law. I know it's an issue of law. Listen to my question before you answer it. We're here on interlocutory appeal. Correct. Denial of qualified immunity. You may be able to win on a summary judgment if the deception was not material. But why is that issue in front of us? Isn't the only issue whether or not the conduct of the officers was conduct of a reasonable police officer? Whether or not the evidence on the record indicates that my clients are entitled to qualified immunity. That's right. Even if they weren't entitled to qualified immunity, they might well win in the absence of materiality, right? Let's assume you can't. Yeah, they lie. They lie all the time. They lie because they think they can get it. When you say they, I mean your client. These two officers lie all the time. They lie to help get warrants. But the truth is the lie in this case made no difference. Is that a qualified immunity defense or is that a defense on the merits of the Fourth Amendment claim? Your Honor, the qualified immunity defense issue is the reasonableness of the officer's investigation. And whether what occurred here. I'm going to make sure I understand your answer. Your answer is that materiality is in front of us. Yes. Because you raised the qualified immunity defense. Yes, because the plaintiff has. In what case do you rely on for the notion that qualified immunity encompasses the merits of the underlying action? Lombardi v. City of Calhoun. City of Calhoun. The intertwining of the reasonableness of the officer's actions. Was that an interlocutory? That appeal, Your Honor, was identical to what is occurring in our case. Was that an interlocutory? Yes, it was. Do you want to save any of your time, Counselor? Yes, two minutes. The only thing, I want to reiterate that. If you look at the record, the plaintiffs only relied on the State Court suppression ruling. And the District Court relied on the State Court suppression ruling. Which is inadmissible and not competent evidence. Because there's no evidence before you of any lying. Thank you. We'll hear from Mr. Krubeck. Yes, thank you. Good morning. I'm Bill Reisner for the respondent, Mr. Krubeck. I just wanted to focus on a couple things in the record that I think are relevant. Counsel says there was no evidence of lies and false statements. Well, the only false statement I take is that you're alleging is the one that I read. Correct? You're alleging some omissions. But the only false statement you're alleging is the one that I read to your friend. Correct? Yes. Okay, so as to that statement, she says, well, it's not so clear what it says. It may be saying that the officers received tips that drugs were being sold in the area, not from this residence. Address that for me. Yeah, sure. The statement said he was in the area of a residence, a residence, that we had received information from concerned citizens that they were selling narcotic drugs. Who does the they refer to? They refers to the persons who were at the residence, at the residence that they were selling drugs. It is correct, isn't it, that when they encountered Mr. Deal, that after telling him he had no drugs and finding drugs on him, he told him that he was in the area and he had been to a house to attempt to buy drugs and the deal didn't consummate because somebody suspected, apparently correctly, that law enforcement was in the area. So then they take this fellow and ask him to identify the specific house where the drugs were being sold out of. Am I right so far? Yeah. What's wrong with that? Well, area is, this is a big... But he does more. He identifies the house. It turns out it's the wrong house. Not initially, but they, you know, they take him back and he identifies the wrong house. He's a drug addict, so he's not very good at this. But what have they done wrong so far? Well, the manner of how he identified the house. He beforehand told them that he didn't know where the house was. He didn't know the address of the house. Couldn't provide any description of the house beyond... So they took him out there and said, okay, point to the house where this happened. And he does, right? Yeah. And they told the judge that. See, the question isn't in front of us whether or not the judge should have issued the warrant, it seems to me. The question in front of us is whether or not the police lied to the judge. So with respect to taking him around, they told the judge all that, didn't they? You know, the, well, when... Can you start with the yes or no? Excuse me? In responding to the judge's question. They told the judge that they couldn't identify the house initially, so they went back and took him around and finally pointed out the right house. That's in the affidavit. Yeah. So that's not a falsehood. It's not worth anything. That's what... I want you to put aside for a second the question of whether the judge should have issued the warrant, whether or not there was probable cause. My question is, I'm trying to figure out what parts of the warrant of the affidavit you believe are lies and deceptions. And so far you've identified the area of the house. The district court didn't identify any others, so it's not necessary that you have any others. I just want to know if you think there are any others. Well, I suppose on this one I agree with the master judge who thought that was worthless because what they did is... We're missing each other. We're missing each other. I'm not... Maybe the whole thing is worthless. Maybe it's the worst affidavit in the world. They fooled the people. And some dumb judge... There are dumb judges everywhere. Yeah. Speak for yourself. Who make mistakes from time to time. Put that aside. The gist of your case is that in order to get the warrant, they lied or admitted material facts. This is the lie. The lie you're relying on is that sentence, correct? Yeah. Yes? Well, that's the main lie I rely on. Tell me what the other one is. Okay. Also concealing information. I know. I tried very carefully to distinguish your omissions from lies. Before you go on with that, I want to focus for a second on what your opposing counsel talked about. This appeal is based upon whether or not these officers are entitled to qualified immunity. As a matter of law. As a matter of law. And Pearson says there's a two-step aspect of that. Number one, you've got to show what is unconstitutional. And number two, you have to show a case or cases that are close enough to this situation that any reasonable officer would have known there was a violation of their constitutional rights. In this case, succinctly, what was the constitutional violation that occurred in this case? They omitted information and they gave information to the court to mislead the court by stating or at least suggesting either way that they had information of a residence and that information that people in that residence had been told about. Is that a constitutional violation? Yes. No, the constitutional violation is the illegal search of the house. Of your client's house. Right? That's the constitutional violation. Let's go to the second prong then. What is the case or cases that you would cite that indicates that the constitutional violation that occurred here was well known? If an officer did that, he or she would know perfectly well they had violated the, in this case, the homeowner's constitutional rights. Just as Scalia said, only the plainly incompetent would miss this kind of thing. So without regard to whether judges could ever be that way, let's talk about where is the case? Where are the cases? Starting with Frank's standard, there's a series of Ninth Circuit cases that I've cited. That you believe are substantially the same facts as this case? Yes. Do you meet the second prong of the qualified immunity standard if you just don't write very well? Which seems to be true of these officers. The sentence is, to some extent, incomprehensible. We may want to start giving Tucson police officers grammar lessons. But is it so clear that it's a lie? Yeah, I think it is clear that it was artfully drawn to give information that it wasn't true. Because it asserts something that the officers knew wasn't the case. The officers have had previous complaints in the area of selling drugs, have they not? I wouldn't – that's a – I quoted in the excerpts a statement from Waker where he was saying, well, we had a thing in the neighborhood. Right. That's why they were there. And it went from Palo Verde High School, which is a mile or two away, here and there, that somebody in that neighborhood was doing something. But nothing specific about any adverse. And taking – and no police reports to back that up. Nothing. So let me – again, you don't have to tell me this isn't the record in this case. It's hypothetical. Let's assume the officers had said to the issuing magistrate, we've had lots of complaints of selling drugs in this area. We arrested Mr. Deal. Mr. Deal said he was going to buy drugs from a specific house. We later took him to – took him back and he identified this house. Would there be any deception in that affidavit? There wouldn't be probable cause. That's not what I asked. That's not the question. But would there be deception? Deception. Would there – would that affidavit be deceptive? It may not be enough to get a warrant, but would it be deceptive? Excuse me, I – can we repeat this? Sure. Let me repeat the facts. The officers say, this is an area in which we had concerns about drug sales and citizens had called us about them. We arrested Mr. Deal. When we arrested him, he said he was going to a specific residence to buy drugs. He couldn't identify it at first, but he later identified Mr. Brubaker's house. That's the affidavit. It may not give rise to probable cause. I don't care for purposes of this question. My question is, would that be a deceptive affidavit? You know, I think so, really. The area, the – The answer is plainly not. No? I mean, look, I think the area is so imprecise, there would be no part of Tucson where you can't say, we think somebody in this area is selling drugs. No, look, and I told you, it may not be enough to give rise to probable cause, but it would be plainly, factually true, would it not? Okay. Now, what your opponent says is that's in effect what they said. They weren't very good at where they put participial clauses in sentences. And maybe us educated people reading this sentence don't read it that way, but for the ordinary Joe Sixpack, if you read this, he might read it her way. So what's wrong with that argument? Well, I think this is a situation where educated people believe this. Any native speaker of the English language understands or should understand what this sentence says and what the – and these are trained officers that write search warrant applications that got together to write this thing, helped each other, had it written out and called the judge. So we're not talking about Joe Sixpack. But don't you have to establish that they were either intentionally deceptive or had a reckless disregard for the truth? Isn't that your burden? Ultimately, yeah. Isn't that your burden to resist summary judgment? Yeah, and I think we've shown that. That that's the conclusion that was reached by Judge Perry and reached by the master and reached by the judge. Well, but we review that to no avail. So it's nice that they reached it and they're very smart, but we have to look at it ourselves. Well, I just understand that, that there's nothing biking on it, but it's not irrelevant that in a series of intelligent judges Can I ask you to switch topics for a moment? Yeah. Mr. Deal, I love the name, before he makes his deal, has incurred four convictions for providing false information or something along those lines. As I understand the record, the defendant officers turned to a third officer and said, please look at his criminal record and see if there's any reason why we shouldn't trust him. And that officer says, I looked at it and didn't see those things. Whether or not he's lying, I'm not concerned about. Is there any evidence in the record that he told the affidavits, the people who wrote the affidavits, that there was a prior criminal record? Well, what is in the record is, and it's Wakefield that asked for the journal. There's a bunch of W's here, so I didn't want to use that. Wakefield said that the results were faxed to him in hard copies. Now, Wakefield may be lying, so let's put that aside for a second. Wakefield may be lying about whether or not he learned about the criminal record. My question is, is there any evidence that the officers who wrote the affidavits had any information of a criminal record? Well, Wakefield… Didn't write the affidavit. …said he assisted Pelton in drafting the search warrant. Wakefield said he received a hard fax copy. Wakefield said he reviewed the record check. Wakefield is not a defendant here, correct? Sure, right. So my question is, I mean, I think it's pretty simple. We have two people who are the affidavits, who are the defendants. Is there any evidence that either of them knew of Mr. Deal's previous criminal record? There's an inference because Woolridge asked Wakefield to run the records check. And Wakefield testified that I ran it and maybe I missed it, but I never saw it by a criminal record. So you're asking us to infer from that that these two officers knew of the criminal record? Again, these are statements made by the affidavits that are subject to interpretation. And when we're dealing with something like qualified immunity and an appeal of this nature, do we give any kind of deference to the officers? Do we interpret them in the worst possible way? What is our burden here under the law? Well, summary judgment. We're not getting to summary judgment yet. Right now we're looking at whether or not qualified immunity is proper. And on that basis, how do we look at these? Do we give any deference to this or do we rely in any way? This is de novo review. These are close questions. You can read these things in different ways. Does that affect our analysis for purposes of qualified immunity? I think it's an objective standard. You objectively look at these experienced officers. You objectively look at what they presented to the court. And you make a determination as to whether they were reckless. And they were reckless in a number of ways. You look at the determinations of whether the court was misled. These all talk about the totality of the circumstances. Your time is up. Let me ask my colleague any additional questions of this gentleman. Thank you, sir. Thank you for your argument. So we'll now hear from the attorney for the affidavits. Thank you, Your Honor. I wanted to address the qualified immunity question that you were asking, Mr. Reisner. The first issue that you review on de novo is the reasonableness of the officer's actions and whether clearly established law put the officers on notice that they committed a constitutional violation. So it doesn't clearly establish law tell officers they may not lie to a I know you're saying it didn't. That they may not lie to a magistrate in order to gain a search warrant. Clearly established law in regards to judicial deception cases, Your Honor, informs the officer that if they have information that they omit or false information that would affect with awareness that omission of that information or that telling the court of false information results in the magistrate issuing a warrant based on probable cause. So you think clearly established, the reasonable police officer does not know based on clearly established law that he may not lie to a magistrate in an affidavit? In a generalized statement of the law, yes.  You get qualified immunity if you lie and it turns out it doesn't matter. My officers get qualified immunity in this case, Your Honor, because they have no awareness of Diehl's prior record and established case law in U.S. v. Miller and Garcia v. County Merced. I wasn't asking you about the prior record. I was asking you about the affirmative statement. I know you think the affirmative statement is not inaccurate. But let's assume that we read it as plainly inaccurate. If it is plainly inaccurate, is that enough to get to the jury? I think you have to have a showing, which Mr. Reiser did not make, a showing that it was intentional. Well, they intentionally made the statement. We all agree that if the statement says what I think it says, the officers did not believe that to be true, correct? They did not believe that they'd ever received a tip from this residence. They had no information about Ruedecker's residence and did not indicate it was Ruedecker's residence. So if the statement is just false on its face, is that enough to get to the jury on the issue of whether the officers intentionally or recklessly made a false statement? No, Your Honor, because if you insert the qualified immunity aspect of it, the reasonableness of that statement, whether or not that wasn't done deliberately or with the intent to deceive. Okay. Additional questions? No. Thank you. Thank you both for your argument. The case just argued is submitted.
judges: Hawkins, M. Smith, Hurwitz